288 P.2d 790

**Austin F. WINCHESTER, Plaintiff and Appellant,**

**v.**

**EGAN FARM SERVICE, Inc., Defendant and Respondent.**

No. 8219.

Supreme Court of Utah.

Oct. 20, 1955.

130

Glen E. Fuller, Joseph Y. Larsen, Jr., Salt Lake City, for appellant.

Neil R. Olmstead, J. A. Howell, Richard W. Brann, Ogden, for respondent.

WADE, Justice.

Plaintiff, Austin F. Winchester, seeks to recover damages for personal injuries caused by a lever attached to a baler which he was operating suddenly becoming unlocked from a groove in its anchor-plate, and flying up and striking him across his face, thereby breaking his nose and injuring his right eye. The court granted a nonsuit at the end of plaintiff's evidence. To reverse this decision plaintiff brings this appeal.

Plaintiff is a farmer at Mountain Green, a small town about 20 miles southeasterly from Ogden city through Weber Canyon and defendant Egan Farm Service is a farm implement dealer in that city. On September 18, 1951, defendant sold to plaintiff the new "Long 50" hay baler involved in this action. Plaintiff baled hay for himself and others during that fall and the next spring for about five weeks prior to the accident on June 16, 1952. Plaintiff testified that after finishing one piece he took the machinery out of gear by pushing this lever forward and locking it in a depressed position. He then pulled into the next field, and as he turned to release the lever to put the machinery in gear but before he touched the lever it came loose and flew up and struck him in the face, as a result of which he was confined in a hospital for five days.

The baler came to the defendant from the distributor fully assembled except for this lever and its attaching parts which were assembled by defendant before delivery to plaintiff. All of the parts usually come with the baler from the manufacturer ready to be assembled and the assembly is made by inserting a ⅜ inch anchor-bolt through a hole in the top front side of the steel bale frame, then through a cylindrical sleeve, bushing or spacer, hereafter referred to as a sleeve, which fits against the outside of the frame through a hole in the bottom end of the lever. Beyond the outer end of the sleeve which runs through the bottom end of the lever a large washer is fitted on the bolt, then a small lock washer and then a burr or nut is turned on the threads on the outer end of the bolt thereby cinching the sleeve firmly against the side of the frame so that the top end can move freely back and forth without binding against the frame. From the bottom or anchor-bolt the lever is about five feet long, goes upward through a yoke or anchor-plate on top of the bale frame to which it is attached, it then curves forward and thereafter continues straight to its upper end. The yoke or anchor-plate has a notch slot or groove at each end into which a locking pin or bolt slides from downward spring pressure when the lever is pushed far enough either way, sliding over the top of the anchor frame thus locking the lever into that position. The locking pin is attached by wire to a small hand-grasp lever near the top end of the large lever by which it is

raised out of the groove at either end of the anchor-plate and in that manner the baler machinery is placed and locked in and out of gear. It is out of gear when in the forward depressed position and in gear when in the backward raised position. This lever is under spring tension toward the rear. When in the forward depressed position it is about nine inches to the right of the driver's seat on the tractor which pulls the baler where the operator sits.

■ Unless under the evidence it would be unreasonable to find, 1) that defendant was negligent, or 2) that its negligence proximately caused the accident, or under the evidence it would be unreasonable not to find 3) that plaintiff was guilty of contributory negligence which proximately caused the accident or 4) that it would be unreasonable not to find that plaintiff assumed the risk of this accident, it was error to grant a non-suit. In determining this question we must view the evidence and all inferences therefrom in the light most favorable to plaintiff. With this in mind we will examine the evidence.

Plaintiff claims that the evidence would reasonably support findings of fact from which two grounds of negligence which proximately caused the accident could reasonably be inferred: 1. That the defendant negligently assembled the lever by using a ⅜ inch anchor-bolt inside of a ½ inch hole in the sleeve, thereby allowing so much up and down play in the lever attachment that the locking pin could work loose and allow the lever to fly up and thus proximately cause the accident. 2. That the defendant negligently assembled the lever by using only a ⁵⁄₁₆ inch anchor-bolt without any sleeve thereby allowing so much up and down play in the lever that the locking pin or bolt could slip out of the slot or groove in the front end of the anchor-plate and allow the lever to fly up and hit him in the face.

■ Plaintiff's first ground of negligence is based on the facts testified to by defendant's manager, that is, that a ⅜ inch anchor-bolt was inserted inside a ½ inch hole in the sleeve, and is contrary to plaintiff's testimony. Such facts do not show that defendant was negligent. For, although, an anchor-bolt larger than the ⅜ inch bolt prescribed might have been better, still defendant had no responsibility or duty to plaintiff to redesign this machinery. The designing of this machinery was an engineering job undertaken by the manufacturer and defendant was not negligent if he assembled this lever in accordance with such design and the manufacturer's instructions.

Plaintiff's second ground of negligence is based on the facts as he claims they were. He testified that about two weeks after the accident he examined the lever as it was then attached to the baler and found that it had about ⅜ inch up and down play, which was sufficient so that the locking bolt could thereby be raised completely out of the slot or groove in the anchor-plate on top of the baler frame with such bolt fully de-

pressed. This would account for the sudden releasing of the lever before plaintiff touched it with his hands. He further testified that after observing this condition trying to turn the burr off the end of the anchor-bolt he broke it just inside of the burr where the threads ended and the burr with the outer end of the bolt and the large washer and the small lock washer fell to the ground, and that when he removed the bottom hole in the lever from over the anchor-bolt he found that there was no sleeve in between them, which accounted for the excessive up and down play which he found in the lever before he removed the anchor-bolt.

The broken anchor-bolt which plaintiff testified that he removed from the bottom end of the lever was introduced in evidence. This bolt is not more than 5/16 of an inch, and smaller than the 3/8 inch bolt provided by the manufacturer. It shows evidence of wear on one side within one-half inch from the head at which point it is slightly bent and beyond which point the opposite side shows evidence of wear. These conditions are consistent with plaintiff's claim that the bolt was undersized and had been used as an anchor-bolt for this lever without the required sleeve.

Plaintiff's testimony was weakened in some respects on cross-examination. He admitted that his eyesight was impaired when he removed the bolt, that he did not pick up the broken-off end or the washers but stated he could see alright. He re-mained positive that there was no sleeve on the bolt, stating that he did not then know that there was supposed to be one. Since he was not looking for such a sleeve it is not improbable that it was there and he failed to notice it. Contrary to defendant's argument, there was no testimony that the anchor-bolt which was installed was the required size or that it was the one furnished by the manufacturer or that the sleeve was in fact inserted over the bolt by defendant in making the assembly. Defendant's manager, who was the only witness on that point merely testified to what parts the manufacturer usually furnished and how the assembly was usually made in accordance with the manufacturer's directions. He made no claim that he assembled this lever, that he was present when it was assembled or that he later inspected such assembly. Plaintiff also had some difficulty to explain how the lever could strike him with the top end in his right eye while leaning to the right over the course of the lever, but he insisted that such was the fact.

There was introduced in evidence at the trial for illustrative purposes a steel plate somewhat similar to the bale frame on which the lever was anchored, together with the lever, an anchor-bolt and sleeve taken from another similar baler, and the broken anchor-bolt which plaintiff claims he took from this baler and some other bolts and washers. On cross-examination in assembling the lever to the steel plate using the

broken bolt it became apparent that this bolt was so long that the lever could not be cinched up against the side of the plate without adding more washers between the threads and the bolthead. Thereupon plaintiff admitted that he might have been mistaken in his previous testimony that there was only the burr, the large washer and the small lock-washer on the outside of the lever when he broke that bolt. He admitted that these additional washers might have been between the bolthead and the bale frame, or between the outside of the bale frame and the inside of the lever or beyond the outside of the lever but he did not remember where they were. This weakens his positive claim that there was no sleeve on the bolt, for if he was mistaken on these washers he could be mistaken on whether there was a sleeve. In assembling this lever and attachments on cross-examination in the manner he claimed it was when he broke the bolt, he encountered difficulty in cinching the lever tight enough against the plate so that it would not be abnormally loose and still be loose enough so that it could be moved back and forth. However, plaintiff was positive throughout his testimony that prior to the accident the lever came loose unexpectedly, that he had never prior to that time noticed any undue play and that to his knowledge there had been no change in the lever assembly after the baler was delivered to him before he broke the anchor-bolt in removing the lever. During that time four other persons operated the baler but there was evidence that none of them either tampered with or changed that lever connection.

■■ Under this state of the evidence it is a close question whether it is within the bounds of reason to believe that plaintiff found the lever and attachments assembled with an under-sized anchor-bolt and without any sleeve between it and the hole in the lever. We appreciate that the trial judge was in a better position to evaluate this testimony than we are, having heard and seen the witnesses, and this is particularly true in view of the fact that part of the evidence consisted of demonstrations which we are unable to fully appreciate from merely reading the record. We also appreciate that plaintiff took no one with him when he experimented with this lever assembly and took the anchor-bolt off and therefore there can be no one to dispute his word. However, we do not suggest that he planned it that way. We have in mind that in some respects the cross-examination showed that he had been mistaken and his memory or observation faulty. From the evidence we conclude that the jury could not reasonably find that the defendant did not properly assemble the lever attachment to the baler or that defendant was negligent which proximately caused the accident, so we will not disturb the trial court's finding [1] that no cause of action was shown.

1. Burden of affirmatively showing error is on appellant, see Palfreyman v. Bates & Rogers Const. Co., 108 Utah 142, 145, 158 P.2d 132.

Affirmed with costs to respondent.

McDONOUGH, C. J., and HENRIOD and WORTHEN, JJ., concur.

CROCKETT, J., concurs in result.